68 F.3d 477
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ralphfield HUDSON, Defendant-Appellant.
 No. 95-2062.
 United States Court of Appeals, Seventh Circuit.
 Submitted Oct. 13, 1995.
Decided Oct. 19, 1995.
 
 Before FLAUM, MANION, and WOOD, Circuit Judges.
 
 ORDER
 
 1
 In 1989, Ralphfield Hudson pled guilty to possession of cocaine with the intent to distribute, possession of a firearm during the commission of a drug offense, and possession of a firearm by a felon. He completed his term of incarceration and was serving a five-year term of supervised release when, in March 1995, the government charged Hudson with violating several conditions of his supervised release and sought revocation. The district court found that Hudson had violated his supervised release by possessing a controlled substance with the intent to distribute, using a controlled substance, failing to attend sessions of his drug aftercare program, and failing to submit written reports to the probation office. The court sentenced Hudson to 30 months of imprisonment, and he appeals.
 
 
 2
 Hudson's attorney, Terry L. Deck, filed a motion to withdraw accompanied by a no-merit brief, arguing that any appeal would be frivolous. See Anders v. California, 386 U.S. 738 (1967). We will grant Deck's motion only if the potential issues on appeal are "groundless in light of legal principles and decisions." United States v. Eggen, 984 F.2d 848, 850 (7th Cir. 1993). The Court of Appeals must examine the entire record rather than limit its inquiry to the points raised in the no-merit brief. Anders, 386 U.S. at 744.
 
 
 3
 In his Anders brief, Deck notes that Hudson wishes to argue that the evidence was insufficient to support the district court's finding that he possessed a controlled substance with the intent to distribute.[1] The burden of proof at a supervised release revocation hearing is preponderance of evidence. United States v. Pratt, 52 F.3d 671, 675 (7th Cir. 1995), cert. denied, 1995 WL 428072 (U.S. Oct. 2, 1995); 18 U.S.C. Sec. 3583(e)(3). We review the district court's decision to revoke supervised release for abuse of discretion. United States v. Young, 41 F.3d 1184, 1186 (7th Cir. 1994).
 
 
 4
 If Hudson has a non-frivolous argument that the district court erred by finding that he possessed a controlled substance with the intent to distribute, his appeal should go forward. If the district court erred in finding that he was guilty of possession with the intent to distribute, Hudson would receive a significantly lower sentence. Possession with intent to distribute is a Grade A violation. See U.S.S.G. Sec. 7B1.1(a)(1).[2] Hudson had a criminal history category of IV, so a Grade A violation carries a sentencing range of 24-30 months. U.S.S.G. Sec. 7B1.4(a)(1). In contrast, the other infractions committed by Hudson were Grade C violations, which carry a guideline range of 6-12 months. U.S.S.G. Sec. 7B1.4(a).
 
 
 5
 The evidence against Hudson on the possession with intent to distribute charge comes from a statement that he made to the police. On March 7, 1995 at approximately 10:00 a.m., Hudson was involved in a traffic accident when the car he was driving collided with a Rockford city bus. See R. 159, Hudson Statement at 2. Police found small amounts (0.2 grams each) of cocaine and heroin in the car. R. 173 at 51, 54. Following the accident, Hudson went to the police station. R. 159, Hudson Statement at 2. At approximately 11:45 a.m., he was read his Miranda rights and signed a Miranda waiver. R. 173 at 6-7. Hudson was not able to make a statement at that time, however, because he suffered a seizure and was taken to the hospital. See id. at 15-16. He returned to the police station at approximately 4:45 p.m. and was questioned shortly thereafter by Detective Robert Redmond of the Rockford Police Department. Id. During the questioning, Hudson told Redmond that he had purchased two $20 "rocks" of crack cocaine, one $10 bag of powder cocaine, and one $10 bag of heroin. R. 159, Hudson Statement at 1. He stated further that he intended to give the drugs to another person in order to repay a debt. Id. This statement is the only evidence in the record that establishes that he intended to distribute the drugs.
 
 
 6
 Hudson has a potential argument that the statement should be suppressed because he did not properly waive his Miranda rights. The police read Hudson his rights at 11:45 a.m., but the Miranda warnings were not repeated when he was questioned after his return from the hospital five hours later.[3] Hudson could potentially argue that Redmond was required to re-read him his rights in full before questioning him.
 
 
 7
 As an initial matter, it is not entirely clear that the police were obligated to read Hudson his rights before questioning him. Miranda warnings are necessary only if the subject of the questioning is "in custody;" the warnings were required only if Hudson was under formal arrest or his movements were restrained in "the degree associated with a formal arrest." Stansbury v. California, 114 S. Ct. 1526, 1529 (1994), quoting California v. Beheler, 463 U.S. 1121, 1125 (1983); see also United States v. Saadeh, 61 F.3d 510, 519-20 (7th Cir. 1995). Agent Redmond testified that during the interview, Hudson was not under arrest, was not handcuffed, and was free to leave at any time. R. 173 at 5. Hudson presented no evidence to contest this testimony. Thus, it appears that the Miranda warnings given to Hudson were an unnecessary precaution.
 
 
 8
 Next, even if Hudson was in custody at the time of the questioning, this court has held that Miranda warnings need not be repeated whenever there is a lapse of time between the initial reading of the rights and subsequent questioning. United States ex rel. Patton v. Thieret, 791 F.2d 543, 547-48 (7th Cir.), cert. denied, 479 U.S. 888 (1986). This is true even if several hours have passed since the rights were read. United States v. Diaz, 814 F.2d 454, 461 n. 2 (7th Cir.) (statement not obtained in violation of Miranda where Diaz had been advised of his rights "several hours earlier"), cert. denied, 484 U.S. 857 (1987); United States ex rel. Henne v. Fike, 563 F.2d 809, 814 (7th Cir. 1977) ("passage of nine hours between [the Miranda] warnings and the waiver" not sufficient "to require that fresh warnings be administered"), cert. denied, 434 U.S. 1072 (1978). The five hours that elapsed in Hudson's case are less than the nine hours in Henne and comparable to the "several hours" that elapsed in Diaz. Thus, under Henne and Diaz, any argument that the police should have re-administered Hudson's Miranda warnings would be frivolous.
 
 
 9
 Finally, Hudson could potentially argue that because he had suffered a seizure only a few hours earlier, he lacked the mental capacity to voluntarily waive his Miranda rights. This claim, however, finds no support in the record. Hudson does not offer any medical or other evidence that the seizure affected his capacity to make a knowing and intelligent waiver. In contrast, Redmond testified that Hudson "appeared calm" during the conversation and "didn't appear to have any problems talking with" Redmond. R. 173 at 10. In addition, Hudson remembered that his rights had been read to him before, id. at 18, and he informed Redmond that he understood his rights and "was willing to talk." Id. at 7. This evidence demonstrates that Hudson understood his rights and made a knowing and intelligent decision to waive them. Thus, any argument that his Miranda waiver was not knowing and intelligent would be frivolous.[4]
 
 
 10
 Any argument that Hudson's self-incriminating statements to Detective Redmond should not have been admitted at the revocation hearing would be frivolous. Thus, the district court did not abuse its discretion by finding that Hudson possessed cocaine and heroin with the intent to distribute. The 30-month sentence falls within the guideline range, see U.S.S.G. Sec. 7B1.4(a)(1), and our independent review of the record does not reveal that Hudson possesses any other potential claims. Because any argument that Hudson could raise on appeal would be frivolous, counsel's motion to withdraw is granted, and the appeal is dismissed.
 
 
 11
 APPEAL DISMISSED.
 
 
 
 [1]
 Deck does not discuss any potential challenges to the other violations, and any such challenges would be frivolous. First, urinalysis results show that Hudson tested positive for cocaine in December 1994 and January 1995. R. 159, Lab Test Results. Next, at the revocation hearing, Richard Bockover, Hudson's Probation Officer, gave unrebutted testimony that Hudson had failed to submit written reports to the probation department in January and February 1995 and that he was not complying with the conditions of his aftercare program. R. 173 at 82, 87. Thus, any argument that Hudson did not violate his probation by using drugs, failing to attend the aftercare program, or failing to submit written reports to probation would be frivolous
 
 
 [2]
 Under Sec. 7B1.1(a)(1)(A)(ii), a controlled substance offense that is punishable by imprisonment for more than one year is classified as a Grade A violation. Possession with intent to distribute is punishable by imprisonment for over one year. See 21 U.S.C. Sec. 841. In contrast, mere possession of the amount of drugs found in Hudson's car (see infra) is not punishable for imprisonment by over one year, see 21 U.S.C. Sec. 844, making it a Grade C violation under U.S.S.G. Sec. 7B1.1(a)(3)
 
 
 [3]
 Instead, Detective Redmond asked Hudson if he had been informed of his rights previously. See R. 173 at 6. Hudson responded affirmatively, and he also informed Redmond that he understood his rights, had signed a waiver, and was willing to talk. Id. at 6-7
 
 
 [4]
 Likewise, any claim that Hudson's confession was involuntary would be frivolous on this record. To have his confession suppressed as involuntary, Hudson must show that it was induced by coercion or misconduct on the part of government officials. See Colorado v. Connelly, 479 U.S. 157, 167 (1986); United States v. Montgomery, 14 F.3d 1189, 1194 (7th Cir. 1994). The record contains no evidence that Hudson was coerced into making a confession